**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

ANTHONY P.,                          )
                                     )
            Plaintiff,               )
                                     )
      v.                             )        1:22CV963
                                     )
MARTIN J. O'MALLEY,                  )
Commissioner of Social               )
Security,                            )
                                     )
            Defendant.[1]            )

**MEMORANDUM OPINION AND ORDER**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Anthony P., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) The Commissioner has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 12 (Plaintiff's Brief); Docket Entry 15 (Commissioner's Brief)). For

_____

[1] On December 20, 2023, President Joseph R. Biden, Jr., appointed Martin J. O'Malley as Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should substitute for Kilolo Kijakazi as Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I.  PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI (Tr. 236-50), alleging a disability onset date of January 3, 2021 (see Tr. 241).[3]  Upon denial of those applications initially (Tr. 87-100, 124-33) and on reconsideration (Tr. 101-14, 139-46), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 147-48). Plaintiff, his attorney, and a vocational expert ("VE") attended the hearing.  (Tr. 52-74.)  The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act.  (Tr. 32-51.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 5-11, 221-22, 372-74), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1.    [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2025.

2.    [Plaintiff] has not engaged in substantial gainful activity since January 3, 2021, the alleged onset date.

_____

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge . . . to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings therein." (Docket Entry 13 at 1.)

[3] Plaintiff's DIB application lists January 3, 202**0**, as the alleged onset date.  (See Tr. 236, 239.)  His application for SSI (see Tr. 241), however, as well as his later filings (see, e.g., Tr. 291), reflect January 3, 202**1**, as the onset date, and, thus, this Memorandum Opinion and Order will use January 3, 202**1**, as the operative onset date.

2

. . .

3. [Plaintiff] has the following severe impairments:
degenerative disc disease and obesity.

. . .

4. [Plaintiff] does not have an impairment or
combination of impairments that meets or medically equals
the severity of one of the listed impairments in 20 CFR
Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional
capacity to perform light work . . . except that he is
limited to occasional use of the right lower extremity to
operate foot controls. In addition, [he] can
occasionally climb ramps and stairs, can never climb
ladders, ropes, or scaffolds, and can occasionally stoop,
kneel, crouch, and crawl. Finally, [he] can have no
exposure to unprotected heights.

. . .

6. [Plaintiff] is unable to perform any past relevant
work.

. . .

10. Considering [Plaintiff]'s age, education, work
experience, and residual functional capacity, there are
jobs that exist in significant numbers in the national
economy that [he] can perform.

. . .

11. [Plaintiff] has not been under a disability, as
defined in the . . . Act, from January 3, 2021, through
the date of this decision.

(Tr. 37-46 (bold font and internal parenthetical citations
omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the

4

case before a jury, then there is substantial evidence." <u>Hunter</u>, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." <u>Mastro</u>, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." <u>Id.</u> at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" <u>id.</u>

5

(quoting 42 U.S.C. § 423(d)(1)(A)).[4] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[5] A finding adverse to the claimant at any of several points in the SEP forecloses an award

---

[4] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

[5] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

and ends the inquiry.  For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied.  The second step determines if the claimant is 'severely' disabled.  If not, benefits are denied."  Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled."  Mastro, 270 F.3d at 177.  Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]."  Id. at 179.[6]  Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant  work"; if so, the claimant does not qualify as disabled.  Id. at 179-80.  However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering

_____

[6] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations."  Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)).  The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)."  Hall, 658 F.2d at 265.  "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)."  Hines, 453 F.3d at 562-63.

7

both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." <u>Hall</u>, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. <u>Hines</u>, 453 F.3d at 567.[7]

## B.  Assignment of Error

In Plaintiff's first and only assignment of error, he argues that "[t]he ALJ erred by failing to perform a proper function-by-function evaluation of Plaintiff's ability to sit, stand and walk when formulating the RFC." (Docket Entry 12 at 4.) In particular, Plaintiff highlights his own statements (see <u>id.</u> (citing Tr. 60-62, 64, 319-28)), as well as the medical evidence (see <u>id.</u> at 5-7 (citing Tr. 484, 486, 488-89, 493, 495, 500, 503, 506-07, 509-11, 513, 515-17, 529, 534, 539, 851-52, 893, 896, 921, 938, 950-51, 989, 992, 1005)), that he believes supports greater limitations on his abilities to sit, stand, and walk, and argues that, "[d]espite th[at] testimony and medical evidence, the ALJ included only a limitation to light work in the RFC, meaning that [Plaintiff] would be expected to sit, stand, or walk up to 6 hours out of an 8-hour

---

[7] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., <u>Hunter</u>, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

workday" (id. at 7 (citing Tr. 40)). According to Plaintiff, "[t]he ALJ very briefly summarized some of the medical evidence" (id. at 8 (citing Tr. 41-42)), and "admit[ted] that [Plaintiff]'s allegations 'ha[d] some support in the record'" (id. (quoting Tr. 41)), but "[u]ltimately . . . failed to explain how [the ALJ] arrived at the apparent conclusion that [Plaintiff] could sit, stand, or walk for an entire two-hour period between his regularly scheduled breaks" (id. at 10 (citing Tr. 40)). In that regard, Plaintiff notes that "[t]he calculation of frequency of position change (much like the calculation of time off task) can be outcome determinative." (Id. (citing Holland v. Commissioner of Soc. Sec. Admin., Civ. No. 17-1874, 2018 WL 1970745, at *10 (D. Md. Apr. 25, 2018) (unpublished)).)

Plaintiff further faults the ALJ for failing to "'explain how [s]he decided which of [Plaintiff]'s statements and evidence to believe and 'which to discredit, other than the vague (and circular) boilerplate statement that [the ALJ] did not believe any claims of limitations beyond what [s]he found when considering [Plaintiff's RFC].'" (Id. at 8 (quoting Mascio v. Colvin, 780 F.3d 632, 639-40 (4th Cir. 2015)).) In Plaintiff's view, "'[h]aving met [his] threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [he wa]s entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that [his] pain [wa]s so continuous

9

and/or so severe as to prevent [him] from working a full eight hour day.'" (Id. at 11 (quoting Hines, 453 F.3d at 565).)  Plaintiff additionally emphasizes that "[t]he [United States Court of Appeals for the] Fourth Circuit . . . in *Dowling* . . . determin[ed] that the ALJ should have specifically addressed the claimant's testimony regarding how long [s]he was capable of sitting, especially in light of a sedentary RFC." (Id. at 10 (citing Dowling v. Commissioner of Soc. Sec., 986 F.3d 377, 388-89 (4th Cir. 2021)).) Plaintiff ultimately contends that "the case must be remanded for . . . the ALJ [to] perform a proper function-by-function analysis of [Plaintiff]'s ability to . . . sit[], stand[ ,] and walk[], both at one time and total in a workday, and then question the VE regarding the vocational effects of th[ose] . . . findings on [Plaintiff]'s ability to work." (Id. at 11.)  Those contentions lack merit.

RFC measures the most a claimant can do despite any physical and mental limitations. Hines, 453 F.3d at 562; 20 C.F.R. §§ 404.1545(a), 416.945(a).  An ALJ must determine a claimant's exertional and non-exertional capacity only after considering all of a claimant's impairments, as well as any related symptoms, including pain. See Hines, 453 F.3d at 562–63; 20 C.F.R. §§ 404.1545(b), 416.945(b).  The ALJ then must match the claimant's exertional abilities to an appropriate level of work (i.e., sedentary, light, medium, heavy, or very heavy). See 20 C.F.R. §§ 404.1567, 416.967.  Any non-exertional limitations may further

10

restrict a claimant's ability to perform jobs within an exertional level.  See 20 C.F.R. §§ 404.1569a(c), 416.969a(c).

An ALJ need not discuss every piece of evidence in making an RFC determination.  See Reid v. Commissioner of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014).  However, "the ALJ must both identify evidence that supports his [or her] conclusion and build an accurate and logical bridge from that evidence to [that] conclusion."  Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (internal emphasis, quotation marks, and brackets omitted).  As to the role of the function-by-function analysis in that determination, the relevant administrative ruling states: "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis. . . .  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."  Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *1 (July 2, 1996) ("SSR 98-6p").

The Fourth Circuit has addressed this administrative ruling and the issue of whether an ALJ's failure to articulate a function-by-function analysis necessitates remand.  See Mascio, 780 F.3d at 636-37.  Specifically, the court stated "that a per se rule is inappropriate given that remand would prove futile in cases

11

where the ALJ does not discuss functions that are irrelevant or uncontested," id. at 636, but that "'remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review,'" id. (internal brackets and ellipsis omitted) (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Here, the ALJ did not expressly assess Plaintiff's abilities to sit, stand, and walk on a function-by-function basis (see Tr. 40-44); however, no basis for remand exists, because the ALJ's decision nevertheless supplies the necessary "accurate and logical bridge," Woods, 888 F.3d at 694 (internal quotation marks omitted), between the evidence and her findings that Plaintiff's degenerative disc disease (A) qualified as a severe impairment at step two of the SEP (see Tr. 38), but (B) did not cause limitations greater than the RFC's allowance of up to six hours of sitting, standing, and walking (in no more than two hour intervals generally) in an eight-hour workday (see Tr. 40).

As an initial matter, to the extent Plaintiff intends his contention that he could "rely exclusively on subjective evidence to prove . . . that [his] pain [wa]s so continuous and/or so severe as to prevent [him] from working a full eight hour day'" (Docket Entry 12 at 11 (quoting Hines, 453 F.3d at 565)) to mean that the ALJ erred by considering objective medical evidence in analyzing

12

the intensity, persistence, and limiting effects of Plaintiff's symptoms, such an argument misses the mark. Although the Fourth Circuit recently "reiterate[d ] long-standing [Circuit] law . . . that disability claimants are entitled to rely exclusively on subjective evidence to prove the severity, persistence, and limiting effects of their symptoms," Arakas v. Commissioner of Soc. Sec. Admin., 983 F.3d 83, 98 (4th Cir. 2020), long-standing cases containing the substance of that holding, such as Craig and Hines (among others), clarify that, "[a]lthough a claimant's allegations about h[is symptoms] may not be discredited solely because they are not substantiated by objective evidence of the [symptoms themselves] or [their] severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges []he suffers," Craig, 76 F.3d at 595 (emphasis added); see also Hines, 453 F.3d at 565 n.3 (quoting Craig, 76 F.3d at 595).

In other words, under the appropriate circumstances, an ALJ may choose to rely exclusively on a claimant's subjective symptom reports to find disabling symptoms; however, Arakas, Craig, and Hines do not compel ALJs to consider only subjective evidence, as such a requirement would conflict with both the Act and its implementing regulations, which plainly require ALJs to consider a

13

variety of factors, including objective medical evidence, in evaluating the intensity, persistence, and limiting effects of symptoms. <u>See</u> 42 U.S.C. § 423(d)(5)(A) ("Objective medical evidence of pain . . . established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) <u>must</u> be considered in reaching a conclusion as to whether [an] individual is under a disability." (emphasis added)); <u>see also</u> 20 C.F.R. §§ 404.1529(c), 416.929(c) (directing ALJs to assess a claimant's medical history, <u>medical signs and laboratory findings</u>, daily activities, testimony about nature and location of pain, medication and other treatment used to alleviate pain, along with medical opinions from examining and non-examining sources).

Here, in compliance with <u>Arakas</u>, <u>Hines</u>, and <u>Craig</u>, the ALJ considered the objective medical evidence as <u>one part</u> of her evaluation of the intensity, persistence, and limiting effects of Plaintiff's alleged symptoms. (<u>See</u> Tr. 40-44.) As detailed below, the ALJ also considered Plaintiff's "reports of improvement in [his] pain symptoms beginning in March 2021 followed by even greater improvement in the fall of 2021 after receiving a spinal cord stimulator" (Tr. 43; <u>see also</u> Tr. 42 (discussing such reports)), the lack of "any opinion of a healthcare provider that

14

[Plaintiff] needs a cane in order to walk safely and effectively"
(Tr. 42), and the opinion evidence of record (see Tr. 43-44).[8]

Turning to Plaintiff's assertions regarding the function-by-function analysis, those assertions fall short because the ALJ's evaluation of Plaintiff's subjective symptom reporting elucidates the ALJ's RFC findings regarding Plaintiff's abilities to sit, stand, and walk. In that regard, the ALJ explicitly acknowledged Plaintiff's statements reporting "sharp[,] stabbing, stinging, and tingling pain in his lower back going through his right leg and hip all the way to his toes" (Tr. 40 (referencing Tr. 60)), that "he uses a cane, which his doctor said was a good idea, and he cannot walk without his cane" (Tr. 41 (referencing Tr. 62-63)), that his "symptoms are aggravated by prolonged sitting, standing, and walking" (id. (referencing Tr. 64)), that, "[u]sing his cane, he can walk only about fifteen minutes at a time" (id. (referencing Tr. 63)), and that "[h]e can stand a maximum of fifteen minutes and sit a maximum of thirty minutes at a time" (id. (referencing Tr.

---

[8] Plaintiff's complaint that the ALJ utilized a "vague (and circular) boilerplate statement that [s]he did not believe any claims of limitations beyond what [s]he found when considering [Plaintiff's RFC]" (Docket Entry 12 at 8) also lacks merit. The Mascio court held that an ALJ erred by finding that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not credible to the extent they are inconsistent with the [ RFC] assessment," because "th[at] boilerplate gets things backwards by implying that ability to work is determined first and is then used to determine the claimant's credibility." Mascio, 780 F.3d at 639 (emphasis added) (internal footnote and quotation marks omitted). The court noted that "the ALJ [] should have compared [the plaintiff]'s alleged functional limitations from pain to the other evidence in the record, not to [her RFC]." Id. In contrast, the ALJ here did not use the forbidden language in her finding regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms. (See Tr. 42.)

15

63)).  The ALJ further recognized that Plaintiff "presented similar allegations in his Function Report, in which he stated that his impairments limited his ability to perform . . . standing, . . . walking, [and] sitting, . . . and estimated that he could . . . walk up to 200-300 feet before needing to stop and rest for 10-15 minutes." (Id. (referencing Tr. 324).)  The ALJ noted that Plaintiff's "allegations ha[d] some support in the medical evidence, including the subjective complaints of weakness in the right lower extremity and pain in the low back and right leg, and the clinical findings of lumbar and thoracic degenerative disc disease, abnormal [electromyography ('EMG')] findings, antalgic gait, and abnormal right lower extremity sensation" (Tr. 42); however, the ALJ thereafter found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record" (id.).  Plaintiff raises three challenges to the ALJ's consideration of Plaintiff's subjective symptom reports, none of which carries the day.

First, Plaintiff maintains that "[t]he ALJ's contentions seem to boil down to that [Plaintiff]'s statements at his hearing do not reflect [his] statements to doctors in his treatment notes." (Docket Entry 12 at 8.)  By way of example, Plaintiff points to the ALJ's not[ation] that, at [Plaintiff's] hearing, he said his pain was a '7' or '8' but that his pain was decreased to a '5' after one

16

epidural injection in 2021 and that his spinal cord stimulator provided 80% relief." (Id. (quoting Tr. 42).) In Plaintiff's view, "[d]espite [] experiencing some relief with an epidural injection, pain was still a significant problem as was evidenced by his abnormal examination and increase in medication" (id. (citing Tr. 515-17)), "and by his subsequent spinal cord stimulator implantation" (id.).

The ALJ provided the following analysis of the disparity between Plaintiff's hearing testimony regarding his pain levels and his statements to medical providers:

> In contrast with [Plaintiff]'s allegation that his pain continues to be at a severity of 7 or 8 out of 10, on April 29, 2021, [he] reported that his pain had improved to 5 out of 10, although he continued to have right leg numbness and instability, and subsequent records do not describe any long-term increase in pain levels ([Tr. 513]). Moreover, in September 2021, [he] reported an 80% relief after a spinal cord stimulator trial, and he reported that he was very happy with the results ([Tr. 893]). Following a permanent implantation of a spinal cord stimulator on October 13, 2021, he reported much improvement in his right leg pain at subsequent appointments, including in November 2021 and January 2022 ([Tr. 938, 950]). On December 1, 2021, [he] reported that the pain in his leg was gone ([Tr. 534]). On January 13, 2022, he reported only minor back discomfort despite some continued numbness and balance issues, and his strength was noted to be 5/5 ([Tr. 950-51]).

(Tr. 42 (emphasis added) (space omitted).) For the reasons to follow, that analysis defeats Plaintiff's argument that the ALJ erred by finding inconsistency between Plaintiff's hearing testimony regarding his pain levels and his statements to medical providers.

17

To begin, although Plaintiff correctly observes that his epidural steroid injection provided only short-term pain relief (see Docket Entry 12 at 8), the ALJ explicitly acknowledged that, after the injection, Plaintiff continued to experience "right leg numbness and instability" (Tr. 42), but also noted that "subsequent records d[id] not describe any <u>long-term</u> increase in pain levels" (<u>id.</u> (emphasis added)). Moreover, the record supports the ALJ's latter observation regarding the lack of a "<u>long-term</u> increase in [Plaintiff's] pain levels" (<u>id.</u> (emphasis added)). Although Plaintiff informed his primary care physician just over a month after the injection that the "shots in his back . . . didn't really help" (Tr. 528), the provider did not record a pain level score and found Plaintiff "in no acute distress" (Tr. 529). Subsequently, Plaintiff did report "persistent pain" to his primary care physician (Tr. 852), and that provider noted that Plaintiff "appear[ed] very uncomfortable" (Tr. 850), and referred Plaintiff for a spinal cord stimulator trial (see Tr. 852), but, just two weeks later, his gastroenterologist found Plaintiff "in no distress" and "sitting comfortably on [the] exam room bench" (Tr. 866).

Most significantly, after implantation of the spinal cord stimulator in October 2021, Plaintiff reported an 80 percent reduction in his pain, and that he "[wa]s very happy with the results." (Tr. 893.) As the ALJ pointed out (see Tr. 42), at

18

follow-up neurological visits in November 2021 and January 2022, Plaintiff noted only "some numbness in his right leg" and "minor back discomfort" (Tr. 938, 950 (emphasis added)), and his neurosurgeon described Plaintiff as "in no apparent distress" and as having full strength (id.). Plaintiff also advised his primary care physician in December 2021 that he no longer experienced right leg pain. (See Tr. 534.) Thus, the ALJ did not err by finding the record did not show a "long-term increase" in Plaintiff's pain levels. (Tr. 42 (emphasis added).)

Second, Plaintiff argues that "[t]he ALJ's not[ation] that [Plaintiff's] condition improved after the permanent implantation of his spinal cord stimulator . . . reveals no discrepancy in [his] testimony[, as he] freely admitted that he found great relief from the pain reduction in his right leg." (Docket Entry 12 at 9 (citing Tr. 61).) In Plaintiff's view, "[t]he problem he continued to experience was the pain in his back and the numbness in his right leg" (id. (citing Tr. 61-62)), which [wa]s verified by the medical evidence of record" (id. (citing Tr. 539, 938, 950)). The ALJ, however, cited Plaintiff's reported 80 percent reduction in pain after spinal cord stimulator implantation as inconsistent with Plaintiff's hearing testimony that his "average daily back pain" (Tr. 64 (emphasis added)) remained "at a severity of 7 or 8 out of 10" (Tr. 42 (citing Tr. 64)). As discussed above, in support of that inconsistency, the ALJ pointed to neurological visits in

Case 1:22-cv-00963-LPA   Document 16   Filed 03/01/24   Page 19 of 39

November 2021 and January 2022 (see Tr. 42), at which Plaintiff noted only "minor back discomfort" (Tr. 938, 950 (emphasis added)).

Third, Plaintiff challenges the ALJ's observation "that [Plaintiff's] examinations showed full motor strength" (Docket Entry 12 at 9 (citing Tr. 42)), contending that "weakness was never [Plaintiff]'s primary complaint," but, rather, "[i]t was the sensory loss, pain, and balance issues that dominated [his] complaints" (id.). Moreover, according to Plaintiff, "the ALJ's statement that [Plaintiff]'s sensation was normal appears to be based on a single examination from October 2021" (id. (citing Tr. 42) (stray comma omitted)), but "that note actually indicates that [his] sensation is intact and symmetric as 'per baseline prior to surgery'" (id. (quoting Tr. 1003)).

Although Plaintiff did not primarily complain of weakness, the record contains his subjective reports of lower extremity weakness (see Tr. 484, 510) and thus the ALJ did not err by assessing the intensity, persistence, and limiting effects of Plaintiff's alleged weakness. Moreover, the ALJ accurately observed that "examinations usually showed full motor strength in all extremities" (Tr. 42 (emphasis added) (citing Tr. 510, 850, 926, 939, 951)), while also noting that "the record sometimes show[ed Plaintiff] had decreased lower extremity strength" (id. (citing Tr. 539)). Furthermore, the ALJ did not err in finding that, "[b]y October 2021, [Plaintiff]'s lower extremity sensation had returned to normal as well" (id.

20

(citing Tr. 1003)), as the cited treatment note describes Plaintiff's "sensation" following his spinal cord stimulator implantation surgery as "<u>intact</u> and <u>symmetric throughout</u> (per baseline prior to surgery)" (Tr. 1003 (emphasis added)), which indicates that, not only did Plaintiff have intact sensation <u>after</u> the surgery, but his baseline sensation prior to the surgery had also remained intact.

Beyond the ALJ's analysis of Plaintiff's subjective symptoms reports, the ALJ's evaluation of the opinion evidence provides further support for the sitting, standing, and walking allowances in the RFC. In particular, the ALJ found "largely persuasive" the opinions of the state agency medical consultants that Plaintiff remained capable of "light work" involving up to <u>six hours each of sitting, standing, and walking</u>, "with additional postural and environmental limitations." (Tr. 43 (referencing Tr. 92, 97-98, 105-06, 111-12).) In that regard, the ALJ found the consultants' opinions "consistent with the treatment records describing objective findings of generally normal motor strength and subjective reports of improvement in [Plaintiff]'s pain symptoms beginning in March 2021 followed by even greater improvement in the fall of 2021 after receiving a spinal cord stimulator." (<u>Id.</u>) The ALJ further noted that, "considering [Plaintiff]'s testimony and the treatment records describing antalgic gait, . . . sufficient evidence [existed] to support a greater degree of postural

21

limitation." (Id.) Consistent with that statement, the ALJ included greater limitations on climbing, stooping, kneeling, crouching, crawling, and exposure to hazards in the RFC than the consultants assessed. (Compare Tr. 40, with Tr. 92, 97-98, 105-06, 111-12.) The ALJ also found the opinion of "Christine Elizabeth Zdeb, NP [('NP Zdeb')] of [the] Duke Department of Neurosurgery [] that [Plaintiff] could lift up to ten pounds until six weeks after surgery and up to 25 pounds until twelve weeks after surgery, after which [Plaintiff] could increase activity as tolerated . . . persuasive[ a]s supported by the records from [the] Duke Department of Neurosurgery describing significant improvement in [Plaintiff]'s degenerative disc disease and radiculitis after receiving his spinal cord stimulator, . . . and [] consistent with . . . the other treatment records describing normal strength throughout most of the alleged disability period." (Tr. 43 (internal parenthetical citation omitted) (citing Tr. 926).) Notably, NP Zdeb's opinion did not contain any limitations on sitting, standing, or walking. (See Tr. 926.) Additionally, the ALJ noted that "the record d[id] not reflect that [Plaintiff] was ever prescribed a cane and it d[id] not contain any opinion of a healthcare provider that [Plaintiff] requires a cane in order to walk safely and effectively." (Tr. 42.)

Moreover, by pointing to record evidence Plaintiff believes supports greater limitations on his abilities to sit, stand, and

walk, he misinterprets this Court's standard of review. The Court must determine whether substantial evidence, i.e., "more than a mere scintilla of evidence but . . . somewhat less than a preponderance," Mastro, 270 F.3d at 176 (brackets and internal quotation marks omitted), supported the ALJ's finding regarding Plaintiff's abilities to sit, stand, and walk, and not whether other record evidence weighed against that finding, see Lanier v. Colvin, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.").

Plaintiff's reliance on Dowling fares no better. In that regard, Plaintiff notes that "[t]he Fourth Circuit recently . . . determin[ed] that the ALJ should have specifically addressed the claimant's testimony regarding how long [s]he was capable of sitting, especially in light of a sedentary RFC, and, further, that ALJs have to perform a function-by-function analysis of contested and relevant functions." (Docket Entry 12 at 10 (citing Dowling, 986 F.3d at 388-89).) In Plaintiff's view, "[he] presented evidence that he could not perform the full postural demands of sitting, standing, and walking required of the light exertional level, and the ALJ should have adequately evaluated and

23

her [sic] explained her findings regarding th[o]se contested functions." (Id. at 10-11.)

In Dowling, the claimant's treating physician had opined that the claimant's irritable bowel disease limited her "to sit for only 15 to 30 minutes at one time, and [less than] two hours total in an 8-hour working day." Dowling, 986 F.3d at 384 (internal quotation marks omitted). The Fourth Circuit found that the ALJ reversibly erred by discounting that opinion, id. at 386, because "it [wa]s far from apparent that the ALJ considered – or was even aware of – each of the [regulatory] factors [governing the evaluation of opinion evidence]," id. at 385 (citing 20 C.F.R. 404.1527(c)). That opinion, together with Plaintiff's statements "throughout her administrative and judicial proceedings that her [irritable bowel disease] and anal fissure cause[d] her to experience discomfort when she s[at] for a prolonged period of time" led the Fourth Circuit to find that the ALJ failed to "properly assess the extent to which [the claimant]'s sitting problems impacted her ability to work" in the RFC analysis. Id. at 388. Significantly, the Fourth Circuit found three other deficiencies in the ALJ's RFC analysis, which led the court to find the ALJ's faulty RFC evaluation an additional ground for remand. See id. at 386-89.

In contrast, here, Plaintiff asserts that he has "presented evidence that he could not perform the full postural demands of sitting, standing, and walking required of the light exertional

24

level" (Docket Entry 12 at 10), but fails to point the Court to any particular piece of evidence supporting his inability to sit, stand, and walk for the two-hour intervals required in an eight-hour workday with standard breaks (see id.). Thus, unlike in Dowling, Plaintiff bases his alleged inability to handle the sitting, standing, and walking required by light-exertion work on his own subjective statements (see id. at 4 (citing Tr. 62 (reflecting Plaintiff's testimony that he could sit for about 30 minutes at a time and stand and walk for about 15 minutes at a time))), but, as discussed above, the ALJ found Plaintiff's subjective statements not entirely consistent with the evidence (see Tr. 42) and did not err in doing so.

Lastly, Plaintiff has attached to his brief a Functional Capacity Evaluation ("FCE") dated March 7, 2022 (Docket Entry 12-1), which "indicated that [Plaintiff] could 'occasionally,' meaning up to 1/3 of the day, engage in the activities of sitting, standing, and walking" (Docket Entry 12 at 7 (quoting Docket Entry 12-1 at 2-3)) and reflected "a pain score of 8.5" out of 10 (id. (citing Docket Entry 12-1 at 3)). Plaintiff notes that his "administrative counsel submitted th[e FCE] to the Appeals Council" (id. at 7 n.1 (citing Tr. 6, 373)), but that the FCE "does not appear to be a part of the administrative record submitted to this

25

Case 1:22-cv-00963-LPA   Document 16   Filed 03/01/24   Page 25 of 39

Court" (id.).[9]  According to Plaintiff, "[r]emand is required if
the [C]ourt concludes that the [ALJ]'s decision is not supported by
substantial evidence based on the record as supplemented by the
[FCE] submitted at the Appeals Council level" (id. (citing Bird v.
Commissioner of Soc. Sec. Admin., 699 F.3d 337, 342 (4th Cir.
2012), and Wilkins v. Secretary Dep't of Health & Human Servs., 953
F.2d 93, 96 (4th Cir. 1991))), and Plaintiff maintains that the FCE
"directly supports [his] contentions that he is limited with
sitting, standing, and walking, and that his pain continues to be
around a '7' or '8' in his lower back" (id.).

The Appeals Council, in denying Plaintiff's request for
review, noted that "[Plaintiff] submitted [an FCE] from Michael
Sherk, D.P.T. [('PT Sherk')], dated March 7, 2022 (3 pages)," but
"f[ound] that th[e FCE] d[id] not show a reasonable probability
that it would change the outcome of the [ALJ's] decision," and,
thus, "did not exhibit th[at] evidence." (Tr. 6.)  Consistent with
the language emphasized above, the Appeals Council noted that it

_____

[9] Plaintiff's administrative counsel informed the ALJ during the hearing
that Plaintiff planned to obtain an FCE and requested that the ALJ hold the
record open for submission of that post-hearing evidence. (See Tr. 67.)  The ALJ
agreed to hold the record open for two weeks and advised counsel to contact the
ALJ if counsel needed more time to submit the records. (See Tr. 73.)  The FCE
took place on March 7, 2022 (see Docket Entry 12-1), five days after the
expiration of the two-week deadline of March 2, 2022, for submitting that
evidence.  The record reflects neither that administrative counsel made any
attempt to extend the time for submission of the FCE, nor that counsel ever
submitted the FCE to the ALJ.  The record also does not indicate whether
counsel's failure to submit the FCE to the ALJ constituted an oversight or a
strategic decision to instead submit the FCE to the Appeals Council and argue
that the FCE constitutes new and material evidence requiring remand (see Tr. 372-
74 (reflecting such arguments by Plaintiff's administrative counsel to Appeal
Council)).

26

"ha[d] received additional evidence which it [wa]s making part of the record," that "consist[ed] of . . . [the r]equest for review of [h]earing [d]ecision from [Plaintiff's counsel] received May 27, 2022," and a "[r]epresentative's [b]rief from [Plaintiff's counsel] dated May 27, 2022," which the Appeals Council exhibited as "Exhibit 19B" and "Exhibit 21E," respectively (Tr. 10; <u>see also</u> Tr. 221-22 (Ex. 19B - request for review), 372-74 (Ex. 21E - brief)). Administrative guidance provides that Appeals Council "will evaluate all additional evidence it receives, [and] will only mark as an exhibit and make a part of the official record additional evidence it determines meets the requirements of 20 [C.F.R. §§] 404.970(a)(5)-(b) [and 416.1470(a)(5)-(b)]," but that evidence evaluated but not meeting those regulatory requirements will nevertheless still "<u>be included in the certified administrative record if the case is appealed to Federal court</u>." Hearings, Appeals, and Litigation Law Manual ("HALLEX"), § I-3-5-20C.3 ("Evaluation of Additional Evidence") (Dec. 16, 2020) (emphasis added).[10] Here, despite the Appeals Council's evaluation of the FCE

---

[10] The applicable regulations provide, in pertinent part, as follows:

(a) The Appeals Council will review a case if—

. . .

    (5) Subject to paragraph (b) of this section, the Appeals Council receives additional evidence that is <u>new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision</u>.

and Plaintiff's instant action for judicial review, the FCE does not appear in the administrative transcript before this Court.

That chain of events presents the Court with two possible interpretations of the state of the record. On one hand, the Court could find that the Appeals Council 1) <u>considered</u> the FCE by examining it and then finding that it "d[id] not show a reasonable probability that it would change the outcome of the [ALJ's] decision" (Tr. 6), and 2) <u>should have</u>, under HALLEX § I-3-5-20C.3, <u>incorporated</u> the FCE into the record by including it in the administrative transcript before this Court, such that Section 405(g)'s sentence <u>four</u> should apply. On the other hand, the Court could view the Appeals Council's refusal to "mak[e the FCE] part of the record" (Tr. 10) as an indication that the Appeals Council <u>neither considered nor incorporated</u> the FCE into the record, thereby making sentence <u>six</u> the appropriate framework for decision. <u>See</u> <u>Patricia C. v. Berryhill</u>, No. 4:17CV58, 2019 WL 254981, at *2 & n.3 (W.D. Va. Jan. 2, 2019) (unpublished) (observing that, where Appeals Council found new evidence "did not show a reasonable probability that it would change the outcome of the [ALJ's] decision" and "did not consider and exhibit th[e new] evidence,"

_____

(b) The Appeals Council will <u>only consider</u> additional evidence under paragraph (a)(5) of this section if [the claimant] show[s] <u>good cause for not informing [the Appeals Council] about or submitting the evidence as described in § 404.935</u> [which requires claimants to submit evidence at least five days prior to the ALJ hearing].

20 C.F.R. §§ 404.970, 416.1470 (emphasis added).

28

but copy of that evidence appeared in administrative transcript before the court, "[t]he Commissioner's practice of mixing into the certified copy of the record evidence that her agency has expressly refused to 'consider and exhibit[]' present[ed] an awkward procedural posture for judicial review" and, because the court "might [in the future] have to choose which part of § 405(g)'s text — sentence four or sentence six — governs th[e c]ourt's authority to review the Commissioner's final decision[,] . . . the [c]ourt welcome[d] the parties' input on how best to proceed under § 405(g) when the Commissioner files a certified transcript of the record of the underlying administrative proceedings that contains evidence the Appeals Council has explicitly declined to accept, consider, and/or incorporate into that record" (internal citations omitted)), recommendation adopted sub nom. Coleman v. Berryhill, 2019 WL 254672 (W.D. Va. Jan. 17, 2019) (unpublished).

Further complicating matters, the Fourth Circuit has evaluated cases pursuant to both sentence four and sentence six when confronted with new evidence first presented to the Appeals Council. Compare Wiebusch v. Commissioner, Soc. Sec. Admin., No. 20-1590, 2022 WL 2965653, at *2-3 (4th Cir. July 27, 2022) (unpublished) (reviewing case under sentence four standard where Appeals Council found new evidence consisting of treating physician questionnaire did not show reasonable probability it would change outcome of ALJ's decision but not addressing sentence six or

29

whether Appeals Council had considered or incorporated new evidence), with Jackson v. Astrue, 467 F. App'x 214, 218 (4th Cir. 2012) (holding that, where Appeals Council rejected new evidence because it "d[id] not provide a basis for changing the [ALJ]'s decision[,] . . . [the court's] proper disposition is to remand pursuant to sentence six of § 405(g) which authorizes a remand upon a showing of new material evidence" (emphasis added)).

District courts within the Fourth Circuit similarly take different approaches to cases involving new evidence presented to (but not exhibited by) the Appeals Council. See, e.g., Montoya v. Kijakazi, No. 1:20CV1157, 2022 WL 562945, at *7 (M.D.N.C. Jan. 11, 2022) (unpublished) (Webster, M.J.) (deciding case under sentence four framework because "[the p]laintiff appear[ed] to be seeking a sentence four remand," where Appeals Council failed to acknowledge new evidence submitted by the plaintiff and thus that evidence did not appear in administrative transcript, but also noting that "analysis and result [] would essentially be the same even if [the p]laintiff sought a remand pursuant to sentence six" (emphasis added)), recommendation adopted, 2022 WL 561533 (M.D.N.C. Feb. 24, 2022) (unpublished) (Biggs, J.); Sales v. Saul, No. 1:19CV476, 2020 WL 4735308, at *4 (M.D.N.C. Aug. 14, 2020) (unpublished) (Webster, M.J.) (where "[the p]laintiff submitted additional information to the Appeals Council . . .[, and t]he Appeals Council determined that such evidence d[id] not show a reasonable probability that it

would change the outcome of the [ALJ's] decision," but included the new evidence in the Court's administrative transcript, "the Court conclude[d] that the proper course [ wa]s to remand this matter [under sentence <u>four</u> of 42 U.S.C. § 405(g)] for further administrative proceedings" (internal quotation marks and citations omitted)), <u>recommendation adopted</u>, slip op. (M.D.N.C. Sept. 1, 2020) (Eagles, J.); <u>Donald C. v. Saul</u>, No. 5:18CV63, 2019 WL 9056721, at *11 (W.D. Va. Aug. 19, 2019) (unpublished) (finding that, because Appeals Council concluded that newly submitted evidence did not raise reasonable probability of changing outcome of case and "<u>did not consider and exhibit</u> th[at] evidence," the plaintiff's contention regarding the new evidence constitutes "an argument that the case should be remanded under sentence <u>six</u> of 42 U.S.C. § 405(g) to enable the Commissioner to consider additional evidence in the first instance" (emphasis added)); <u>Lauder v. Saul</u>, No. 1:18CV480, 2019 WL 3457706, at *9-10 (M.D.N.C. July 31, 2019) (unpublished) (Peake, M.J.) (denying remand under sentence <u>four</u> because "no meaningful possibility [existed] - much less a reasonable probability - that the additional evidence would change the outcome of the decision," even where Appeals Council did not <u>exhibit</u> new evidence because it "d[id] not relate to the period at issue" but new evidence <u>appeared in administrative transcript</u>), <u>recommendation adopted</u>, slip op. (M.D.N.C. Aug. 22, 2019) (Eagles, J.); <u>Johnson v. Acting Comm'r of Soc. Sec. Admin.</u>, No. 9:18CV90,

31

2019 WL 2717860, at *6 n.4 (D.S.C. June 27, 2019) (unpublished)
("The Appeals Council ultimately decided that . . . it would <u>not</u>
'consider' or 'exhibit' the evidence because there was not a
reasonable probability it would change the outcome of the
case . . . . The Appeals Council therefore denied review and would
not consider this new evidence *after* making a determination that
the medical records provided no basis to change the ALJ's decision.
Further, the medical records are included in the transcript and
noted as 'Medical Evidence of Record.' Accordingly, this remand is
appropriate under sentence <u>four</u> of 42 U.S.C. § 405(g)."
(underscoring added) (italics in original)); <u>Coleman v. Berryhill</u>,
No. 6:17CV2613, 2019 WL 850902, at *5 (D.S.C. Feb. 22, 2019)
(unpublished) (noting that Appeals Council did not incorporate new
evidence into the record, but finding sentence <u>four</u> remand
appropriate "because it was an error of law [for the Appeals
Council] to not consider and exhibit such evidence"); <u>Hawks v.</u>
<u>Berryhill</u>, No. 1:17CV1021, 2018 WL 6728037, at *5 n.6, *8 n.9
(M.D.N.C. Dec. 21, 2018) (unpublished) (noting that the plaintiff
did not request sentence <u>six</u> remand and could "not argue [for a
sentence <u>four</u> remand based on the fact] that the [new evidence],
when considered as part of the administrative record as a whole,
render[ed] the ALJ's decision unsupported by substantial
evidence[,] . . . because . . . the Appeals Council <u>declined to</u>
<u>incorporate the [new evidence] into the administrative record</u>"

32

(emphasis added)), <u>recommendation adopted</u>, 2019 WL 359999 (M.D.N.C. Jan. 29, 2019) (unpublished) (Schroeder, C.J.); <u>Jones v. Berryhill</u>, No. 1:17CV703, 2018 WL 3849914, at *6-7 (M.D.N.C. Aug. 13, 2018) (unpublished) (denying remand under sentence <u>six</u> where Appeals Council found new evidence "d[id] not show a reasonable probability that it would change the outcome of the decision" and "<u>did not consider and exhibit</u> th[e new] evidence," and <u>administrative transcript before the Court did not contain new evidence</u>), <u>recommendation adopted</u>, slip op. (M.D.N.C. Sept. 4, 2018) (Schroeder, C.J.); <u>Brown v. Colvin</u>, No. 7:14CV283, 2015 WL 7307320, at *6 (E.D.N.C. Oct. 27, 2015) (unpublished) ("To the extent that the <u>lack of formal incorporation</u> of the additional evidence into the record signifies that it remains outside the record, notwithstanding its <u>inclusion in the transcript of proceedings</u>, this evidence is appropriately treated as having been submitted for the first time to th[e] court and therefore as being subject to sentence <u>six</u> of 42 U.S.C. § 405(g)," but also finding that "[r]emand [wa]s [] warranted [under sentence four] if the [new evidence was] deemed to have become part of the record by virtue of the Appeals Council's <u>consideration</u> of [it], even if not formally incorporated into the record" (emphasis added)), <u>recommendation adopted</u>, 2015 WL 7306453 (E.D.N.C. Nov. 19, 2015) (unpublished).

On balance, three facts before the Court in this case favor analyzing Plaintiff's FCE under the sentence <u>four</u> framework,

33

notwithstanding its absence from the administrative transcript before the Court. First, unlike in Donald C., Patricia C., and Jones, the Appeals Council here did _not_ explicitly state that it "did not _consider_" Plaintiff's FCE. (See Tr. 6, 10-11.) The omission of the "did not consider" language from the Appeals Council's decision suggests that it did consider the FCE in making its determination that the FCE did not show a reasonable probability of a different outcome. See Vahey v. Saul, No. 18CV350, 2019 WL 3763436, at *9 (D. Haw. Aug. 9, 2019) (unpublished) (observing that, in other cases, "the Appeals Council had stated that it did not 'consider and exhibit' the evidence; whereas, [in the case before the court], the Appeals Council said only that it did not 'exhibit' the evidence").[11]

Second, the applicable regulation requires the Appeals Council to _consider_ new evidence _only_ if the claimant shows "good cause" for failing to submit the evidence at least five days prior to the hearing before the ALJ, and the Appeals Council here did _not_ expressly find that Plaintiff lacked good cause to submit the FCE

---

[11] Indeed, some district courts hold that merely submitting evidence to the Appeals Council, regardless of whether the Appeals Council "considers" or "exhibits" that evidence, makes that evidence part of the official record and outside the purview of a sentence six remand. See Burgos v. Kijakazi, No. 8:20CV2497, 2022 WL 843594, at *4 (M.D. Fla. Mar. 22, 2022) (unpublished) ("As [the p]laintiff submitted the [new evidence] during the administrative proceedings, and the Appeals Council explicitly addressed those records and found that they did not . . . relate[] to the period at issue, no basis for remand under sentence six exists as to the [new evidence]." (emphasis added)); Barbara H. v. Saul, No. 19 CV 50011, 2020 WL 3469163, at *5 (N.D. Ill. June 25, 2020) (holding that merely "present[ing]" new evidence to Appeals Council, regardless of grounds given by Appeals Council for denying review, precludes district court from ordering sentence six remand).

34

(see Tr. 6). If the Appeals Council implicitly found that Plaintiff showed good cause for failing to submit the FCE to the ALJ, then Section 404.970 required the Appeals Council to consider that evidence. See Vahey, 2019 WL 3763436, at *6 (noting that, "under the new [version of Section 404.970], the Appeals Council could only 'consider' evidence upon a showing of good cause" and, given that Appeals Council's "denial letter [wa]s devoid of any good cause discussion," the possibility existed that "the Appeals Council implicitly found good cause [and ] considered the [new] evidence," thus making the evidence "part of the record").

Third, the Appeals Council must have considered the new evidence to some degree in order to make its determination that the new evidence did not raise a reasonable probability of a different outcome (see Tr. 6). See Vahey, 2019 WL 3763436, at *8 ("Presumably, to decide that the [new evidence] would not change the outcome of the decision, the Appeals Council would have needed to 'consider' those records."); Reyes v. Commissioner of Soc. Sec. Admin., No. 17CV8192, 2019 WL 2098755, at *3 (D. Ariz. May 14, 2019) (unpublished) ("The [c]ourt is unable to reconcile [the Appeals Council's] statement [that it did not consider the new evidence] with the previous sentence in the order finding that the evidence d[id] not show a reasonable probability of changing the ALJ's decision. . . . [T]he Appeals Council made a finding about the merits of the additional evidence and considered whether it

would change the outcome of the decision. Therefore, it is part of the record." (internal citations omitted)); Linnehan v. Berryhill, No. 17CV4146, 2018 WL 6267846, at *8 (N.D. Cal. July 31, 2018) (unpublished) ("The Appeals Council cannot consider the evidence to conclude that it 'does not show a reasonable probability that it would change the outcome of the decision' and then exclude the evidence from the record based on the illogical conclusion that '[w]e did not consider and exhibit this evidence.'"). Under these factual circumstances, the Court will analyze the FCE under the framework of sentence four of Section 405(g).

"[B]ecause [the Appeals Council] denied review, the decision of the ALJ became 'the final decision of the [Commissioner].'" Meyer, 662 F.3d at 704 (quoting Wilkins, 953 F.2d at 96). A court should "uphold the factual findings underpinning the Commissioner's final decision 'if they are supported by substantial evidence and were reached through application of the correct legal standard.'" Id. (quoting Craig, 76 F.3d at 589). "In making th[at] determination, [the Court] 'review[s] the record as a whole' including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.'" Id. (quoting Wilkins, 953 F.2d at 96). Significantly, the Court "review[s] for substantial evidence the ALJ's decision, not the Appeals Council's denial of [the plaintiff]'s request that the Council review the ALJ's decision due to the newly submitted [evidence]." Wiebusch,

36

2022 WL 2965653, at *2 n.3. For the reasons explained in more detail below, after consideration of the record as a whole, the Court finds that the FCE does not render the ALJ's decision unsupported by substantial evidence.

The FCE would not have changed the ALJ's decision, because it lacks supporting "objective medical evidence" and "explanation[s,]" 20 C.F.R. §§ 404.1520c(c)(1), 416.970c(c)(1) (providing that, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be"). The FCE notes that Plaintiff underwent "15 tasks" (Docket Entry 12-1 at 1) which took one hour and 42 minutes to finish (see id. at 2), and then provides a chart listing the tasks and Plaintiff's performance on those tasks (see id. at 2-3). The chart <u>summarily</u> lists Plaintiff's performance on the sitting, standing, and walking tasks as "[o]ccasionally" (<u>id.</u>; <u>see also id.</u> at 3 (defining "[o]ccasionally" as "up to 1/3 of the day")), and provides <u>no</u> explanation of <u>how</u> PT Sherk measured Plaintiffs' ability to sit, stand, and walk or to what extent that measurement depended on Plaintiff's <u>subjective</u> complaints of pain rather than objective findings (see id. at 1-3).[12] Although the FCE does not expressly elucidate such matters, the Court notes that PT

---

[12] Indeed, the FCE itself constitutes only the "[s]ummary" of a "Physical Work Performance Evaluation" of Plaintiff's functional abilities conducted by PT Sherk. (Docket Entry 12-1 at 1 (emphasis added).)

Sherk recorded essentially <u>normal</u> lower extremity strength (5/5 in all muscles groups except 4+/5 in right knee extension and right hip flexion) and <u>no</u> findings of positive straight leg raise tests for radiculopathy or decreased sensation or reflexes (<u>see</u> <u>id.</u> at 2), but did note Plaintiff's subjective complaint of an "increase [in] radiating pain" when standing (<u>id.</u> at 1). Further underscoring PT Sherk's reliance on Plaintiff's subjective reports, the FCE's "Brief Summary of Medical History" section summarizes only Plaintiff's own statements regarding his impairments (<u>id.</u> at 2 (all caps font omitted)), and does not reflect that PT Sherk "ha[d] familiarity with the other evidence in [Plaintiff's instant] claim[s,]" 20 C.F.R. §§ 404.1520c(c)(5), 416.920c(c)(5). Considering the FCE alongside the substantial evidence (discussed above) supporting the ALJ's RFC, including an opinion from Plaintiff's treating neurosurgical providers placing <u>no</u> limits on his abilities to sit, stand, or walk (<u>see</u> Tr. 926), the Court finds that the FCE does not provide a basis for remand.

In sum, Plaintiff's first and only assignment of error fails as a matter of law.

### III. CONCLUSION

Plaintiff has not established grounds for relief.

38

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, and that this matter is **DISMISSED** with prejudice.

<div align="center" style="text-align:right;">

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

</div>

March 1, 2024